UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:24-cv-81213-AHS

LORI ROBINS,

    Plaintiff,

v.

ABERDEEN GOLF & COUNTRY
CLUB, INC., a Florida Not-For-Profit
Corporation; WATERFORD AT
ABERDEEN ASSOCIATION, INC.,
a Florida Not-For-Profit Corporation,

    Defendants.
_____/

**DEFENDANT, WATERFORD AT ABERDEEN ASSOCIATION, INC.'S,
MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DAMAGES**

Defendant, WATERFORD AT ABERDEEN ASSOCIATION, INC. ("Waterford"), by and through its undersigned counsel, by and through the undersigned counsel, moves for partial summary judgment against Plaintiff, LORI ROBINS ("Plaintiff"), and in support thereof, states as follows:

**MATERIAL FACTS**

Waterford hereby incorporates its Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment ("SOF") filed contemporaneously with this instant Motion.

**SUMMARY OF ARGUMENT**

By way of background, this lawsuit arises out of Plaintiff's residency in Waterford, which is a gated subdivision within the private golf community, Aberdeen Golf & Country Club (the "Club"). Specifically, Plaintiff asserts the following causes of action:

  (i)  Count I – Disability Discrimination by the Club in Violation of the Americans with Disabilities Act ("ADA")
  (ii)  Count II – Disability Discrimination by the Club in Violation of the Fair Housing Act ("FHA")
  (iii)  Count III – Disability Discrimination by Waterford in Violation of the FHA
  (iv)  Count IV – Disability Discrimination by the Club in Violation of the Florida Fair Housing Act ("FFHA")
  (v)  Count V – Disability Discrimination by Waterford in Violation of the FFHA
  (vi)  Count VI – Retaliation by the Club in Violation of the FHA
  (vii)  Count VII – Retaliation by Waterford in Violation of the FHA
  (viii)  Count VIII – Retaliation by the Club in Violation of the FFHA
  (ix)  Count IX – Retaliation by Waterford in Violation of the FFHA

*See generally* Amended Complaint [D.E. 29]. However, as explained herein, Waterford is entitled to summary judgment as a matter of law because any alleged damages are wholly speculative and unsupported by the record evidence.

## LEGAL MEMORANDUM

### I. Legal Standard for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. Of Pub. Educ.*, 495 F.3d 1306, 1313-14 (11th Cir. 2007). A party seeking summary judgment can satisfy its initial burden in one of the following ways: "[I]f the non-moving party must prove *X* to prevail [at trial], the moving party at summary judgment can either produce evidence that *X* is not

so *or* point out that the non-moving party lack the evidence to prove *X*." *Bedford v. Doe*, 880 F.3d 993, 996-97 (8th Cir. 2018) (emphasis added). To be clear, a party seeking summary judgment, "…need not set forth evidence when the non-movant bears the burden of persuasion at trial."

"A court need not permit a case to go to a jury…when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 592-94 (1986)). Further, a court is not required "to accept all the nonmovant's factual characterizations and legal arguments. If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir. 1994). Crucially, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**II.   Plaintiff Has Failed to Proffer Any Competent Evidence of Damages to Support Her Claims**

As discussed herein, Plaintiff brings claims for discrimination and retaliation under the FHA and FFHA, wherein Plaintiff seeks compensatory and punitive damages pursuant to 42 U.S.C. § 3613, reasonable attorneys' fees and costs, and "any further relief this Court deems necessary, just and proper." Am. Compl., 63. However, since filing this lawsuit in [insert month and year], Plaintiff has failed to present any competent, non-speculative evidence of damages. Nevertheless, Plaintiff alleges that she has incurred the following damages:

(1) Actual Damages: *a minimum* of $142,436.98 in actual damages and interest for Membership fees and dues paid to Waterford for inaccessible services,
    a. Expenses related to property damage from drainage issues, including:

       i. Cost of replacing landscaping throughout Plaintiff's residence
      ii. Cost of power washing patio monthly
     iii. Cost of refinishing teak patio furniture every two months
     iv. Monthly storage unit fees (10' x 20') for furniture that had to be moved offsite
      v. Cost of temporary repairs/modifications: $9,850 (drainage, bee removal, landscaping)

(2) Property Value Damages: Diminution in property value due to unaddressed maintenance: $150,000 (based on documented forced sale loss amount)

(3) Out-of-Pocket Expenses:
    a. Legal costs and expenses (including expert fees)
    b. Disability-related assistive and Technical assistance for expenses

(4) Non-economic damages:
    a. Emotional distress, humiliation, and mental anguish from being discriminated against, segregated, and denied reasonable accommodations
    b. Loss of use/enjoyment of amenities (pool, voting rights, etc.)
    c. Loss of enjoyment of life and the "Florida country club resort lifestyle" that Plaintiff anticipated when purchasing membership
    d. Suffering violations of privacy, being threatened and harassed by Defendants' lawyers, being mocked by Defendants' spouses, and being defamed as a "troublemaker"
    e. Deprivation of the right to equal housing opportunities regardless of disability status
    f. Interference with Plaintiff's ability to peacefully enjoy her home

(5) Punitive Damages:
    a. Willful discrimination after notice of disability
    b. Retaliation for filing complaints
    c. Creation of hostile housing environment
    d. Intentional failure to provide reasonable accommodations

*See* Plaintiff's Interrogatory Answers, at 16-17, at SOF, Exhibit "B."

However, a "plaintiff bringing an action for damages under the Fair Housing Act must plead proximate cause between his injury and the defendant's unlawful conduct." *See City of Miami v. Citigroup Inc.*, 801 F.3d 1268, 1276 (11th Cir. 2015). Furthermore, compensatory damages are defined as those damages that "will compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong or injury." *See McMillion v. F.D.I.C.*, 81 F.3d 1041, 1055 (11th Cir. 1996). Similarly, "actual damages, roughly synonymous with compensatory damages, are defined as real, substantial and just

damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury." *Id.* "A plaintiff, however, is not entitled to recover compensatory damages in excess of the amount which represents the loss actually inflicted by the action of the defendant." *MCI WorldCom Network Servs. v. Mastec, Inc.*, 995 So. 2d 221, 223 (Fla. 2008).

In the instant matter, Plaintiff has failed to provide any documentation whatsoever to support that she has suffered damages, let alone that she has suffered damages *because* of any actions or inactions by Waterford. *See* Plaintiff's Interrogatory Answers, at 16-17, at SOF, Exhibit "B." In response to Waterford's Request for Production for "[a]ll documents that support your claim that you have suffered damages as a result of any actions or inactions taken by Waterford," Plaintiff referred to documents bates stamped at ROBINS02044-ROBINS02166. *See* Plaintiff's Responses to Waterford's First RFP, at SOF, Exhibit "C." Notably, none of these documents support that Plaintiff has suffered any damages whatsoever <u>because of</u> any actions or inactions by Waterford. *Id.* Specifically, the documents, bates stamped at ROBINS02044-ROBINS02166, merely include:

(i) A pet approval application at Ashford Green at Aberdeen Association, Inc., a wholly separate and distinct subdivision from Waterford (ROBINS02044-02045);

(ii) Comcast documentation received from Aberdeen Property Owners Association ("Ashford Green"), a wholly separate and distinct association from Waterford (ROBINS02046-02049);

(iii) A screenshot of Plaintiff's bank account overview that seems to have no relevancy to Waterford (ROBINS02050-02052);

(iv) A screenshot of the Club's Board of Directors (ROBINS_02053-02056);

(v) Food menus (ROBINS_02057; ROBINS_02074);

(vi) Residential insurance policy (ROBINS02058-02065);

(vii) Certificate of Approval (ROBINS02066);

(viii)   Comcast Request of Service (ROBINS02067);

(ix)    Unspecified policy manual related to members, but does not specify what entity's policy this is (ROBINS02068-02072);

(x)     A payment statement from the Club (ROBINS02073);

(xi)    Warranty deed for Plaintiff's home in Waterford and accompanying paperwork (ROBINS02075-02091);

(xii)   Correspondence between Plaintiff and the Club (ROBINS02092-02108; ROBINS02111-02128; ROBINS02133-);

(xiii)  Photos of feet (ROBINS0210-02110);

(xiv)   E-mail from Davenport to Plaintiff regarding Plaintiff's Certificate of Approval (ROBINS02131-02132);

(xv)    Correspondence between Plaintiff and attorneys regarding Ashford Green, again, a wholly separate and distinct subdivision from Waterford (ROBINS02134-02135; ROBINS02141-02143; ROBINS02146-02148);

(xvi)   Correspondence between Plaintiff and a real estate agent, Bonnie Siedler, regarding Ashford Green (ROBINS02136-02137; ROBINS02145; ROBINS02156-02157; ROBINS02166);

(xvii)  E-mail from Plaintiff to Plaintiff with various months and amounts of money next to each month, with no specificity as to what those amounts of monies represent (ROBINS02138);

(xviii) E-mail from Plaintiff to Davenport asking if anyone knows how she can contact Bug Alert (ROBINS02144);

(xix)   E-mails between Plaintiff and Davenport regarding a roof overflow (ROBINS02139; ROBINS02149-02153);

(xx)    E-mail to Davenport regarding a blast announcement from Waterford regarding the treatment of palm trees with a fungus disease (ROBINS02154-02155);

(xxi)   E-mail from Plaintiff to GRS, wherein Plaintiff thanks GRS for sending her an announcement electronically and it "really helped to accommodate [her] disability (ROBINS02158);

  (xxii) E-mails between Plaintiff and Davenport regarding property damages by FedEx (ROBINS02159-02161);

  (xxiii) E-mails between Plaintiff and Davenport regarding an unidentified purported request for reasonable accommodation (ROBINS_02162-02163); and

  (xxiv) E-mails between Plaintiff and Davenport regarding Plaintiff's Waterford application (ROBINS02164-02165).

*See* ROBINS02044-02166, at SOF, Exhibit "D."

Despite Plaintiff asserting that these documents support her claim that she has suffered damages because of Waterford's actions or inactions, not one document supports Plaintiff's conclusion. *See id.; see also* Plaintiff's RFP Responses, at SOF, Exhibit "C." Interestingly enough, the majority of these documents have nothing to do with Waterford, yet Plaintiff has produced them in an attempt to support her supposed damages. *See id.* Further, the few documents that may have some relation to Waterford in no way support that Waterford proximately caused the complained of damages. Accordingly, Plaintiff, by way of her own documentation, has proven that her damages are entirely speculative and unsupported.

  **A.  *Membership Fees and Dues Paid***

Specifically, as mentioned herein, Plaintiff, in response to Waterford's Interrogatories, asserts that she is seeking "a minimum of $142,436.98 in actual damages and interest for Membership fees and dues paid to Waterford for inaccessible services." *See* Plaintiff's Interrogatory Answers, at 16-17, at SOF, Exhibit "B." However, to date, Plaintiff has failed to identify exactly how much she is seeking, as her assertion suggests that the amount might exceed $142,436.98; provide any documentation whatsoever showing how Plaintiff arrived at the amount; or provide a breakdown of the purported fees and dues. *See id.; see also* ROBINS02044-02166, at SOF, Exhibit "D."

Indeed, Plaintiff has not proffered any evidence to reflect that she has paid $142,436.98 in membership fees and dues to Waterford. *See* ROBINS02044-02166, at SOF, Exhibit "D." Notably, Plaintiff testified that her monthly fees due to Waterford are between $600 and $700. *See* Plaintiff's Dep. Vol. I, 89:6-8, at Exhibit "A." Based on Plaintiff's testimony and the fact that Plaintiff moved into Waterford in September 2022, the most Plaintiff could have paid in dues to Waterford would be $25,600.00 ($700 x 36 months). Accordingly, Plaintiff's conclusory assertion that she is entitled to "a minimum of" $142,436.98 that she claims she paid to Waterford is entirely unsupported, and therefore speculative. Thus, Waterford is entitled to summary judgment on these alleged damages.

### B. *Expenses Related to Property Damage from Purported Drainage Issues*

Next, Plaintiff alleges that she is entitled to damages from purported drainage issues to her home, including the costs of replacing landscaping, power washing her patio monthly, refinishing teak patio furniture, monthly storage units for furniture, and temporary repairs and modifications. *See* Plaintiff's Interrogatory Answers, at 16-17, at SOF, Exhibit "B."

Initially, Plaintiff failed to adequately plead these damages in the operative Complaint. *See* Am. Compl. Additionally, Plaintiff failed to serve the Initial Disclosures required under Federal Rule of Civil Procedure 26. For these reasons, each sufficient to preclude her damages claim, Plaintiff should be precluded from seeking these damages. *See Nunez v. City of Pompano Beach,* No. 20-62626-CIV-DIMITROULEAS/SNOW, 2022 WL 18539329, *2-3 (S.D. Fla. April 26, 2022) (excluding plaintiff's evidence of damages at trial because plaintiff's Rule 26 disclosures were inadequate and plaintiff's brief description of damages without any computations in response to an interrogatory falls shorts of plaintiff's Rule 26 disclosure requirements).

Notwithstanding Plaintiff's failure to adequately plead or compute her alleged damages, Plaintiff has not produced any evidence or documentation to support these purported damages. *See*

*id.*; *see also* ROBINS02044-02166, at SOF, Exhibit "D." As explained herein, the majority of the documents produced by Plaintiff in support of her alleged damages have nothing to do with Waterford, and the few that may in some way be related to Waterford provide no support for Plaintiff's alleged expenses related to property damage from the alleged drainage issues. *Id.*

Notably, even if Plaintiff did experience any drainage issues that resulted in property damages, Waterford's rules are clear that any responsibilities related to, among other things, the Property's gutters/leaders, patio, screen enclosures, and beehives, are the *sole* responsibility of Plaintiff. *See* List of Responsibilities of Waterford and Waterford Homeowners, at SOF, Exhibit "E." Accordingly, even if Plaintiff had to pay for such repairs stemming from roof drainage issues, Waterford's rules are clear that those are not Waterford's responsibility, and thus, Plaintiff cannot establish that Waterford proximately caused such purported damages. *See id.*

Accordingly, Plaintiff's conclusory assertion that she is entitled to damages for these purported expenses that she has provided no proof of is baseless and speculative, and thus, Waterford is entitled to summary judgment on these alleged damages.

C. ***Diminution in Property Value***

Plaintiff further seeks damages for "diminution in property value due to unaddressed maintenance: $150,000 (based on documented force sale loss amount)." *See* Plaintiff's Interrogatory Answers, at 16-17, at SOF, Exhibit "B." Yet again, Plaintiff has neither proffered a single piece of evidence of the alleged diminution of property value nor any evidence showing the alleged loss was proximately caused by Waterford. Furthermore, Plaintiff has not designated an expert to testify to any claim for diminution in property value as a possible measure of damages owed to Plaintiff. Accordingly, Plaintiff's mere speculation that her property has diminished in value cannot support a claim for damages. *See Petticrew v. Petticrew*, 586 So.2d 508, 509 (Fla. 5th

DCA 1991) ("Speculation and conjecture are inadmissible to prove the value of property."). For these reasons, summary judgment is appropriate on Plaintiff's claim for these damages.

### D. Punitive Damages

Under the FHA and FFHA, punitive damages may be permitted if the evidence reflects that a defendant's conduct is motivated by evil motive or intent or shows a reckless or callous disregard to plaintiff's rights. *See Bone v. Village Club, Inc.*, 223 F.Supp.3d 1203, 1220-21 (M.D. Fla. 2016). The Supreme Court of the United States has held that, "it should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

Here, the record evidence does not support that Plaintiff is entitled to any damages, let alone punitive damages. Indeed, Plaintiff has proffered no evidence to support that Waterford has acted with the evil motive or recklessness required to support a claim of punitive damages. *See Bone*, 223 F.Supp.3d at 1220-21.

As discussed herein, the documentation Plaintiff relies on to support any alleged damages whatsoever. *See* ROBINS02044-02166, at SOF, Exhibit "D." Indeed, the only documentation pertaining to Waterford involved:

(i) Plaintiff's residential insurance policy (ROBINS02058-02065);

(ii) Certificate of Approval (ROBINS02066);

(iii) Warranty deed for Plaintiff's home in Waterford and accompanying paperwork (ROBINS02075-02091);

(iv) E-mail from Davenport to Plaintiff regarding Plaintiff's Certificate of Approval (ROBINS02131-02132);

(v) E-mail from Plaintiff to Davenport asking if anyone knows how she can contact Bug Alert (ROBINS02144);

(vi) E-mails between Plaintiff and Davenport regarding a roof overflow (ROBINS02139; ROBINS02149-02153);

(vii) E-mail to Davenport regarding a blast announcement from Waterford regarding the treatment of palm trees with a fungus disease (ROBINS02154-02155);

(viii) E-mail from Plaintiff to GRS, wherein Plaintiff thanks GRS for sending her an announcement electronically and it "really helped to accommodate [her] disability (ROBINS02158);

(ix) E-mails between Plaintiff and Davenport regarding property damages by FedEx (ROBINS02159-02161);

(x) E-mails between Plaintiff and Davenport regarding an unidentified purported request for reasonable accommodation (ROBINS_02162-02163); and

(xi) E-mails between Plaintiff and Davenport regarding Plaintiff's Waterford application (ROBINS02164-02165).

*See* ROBINS02044-02166, at SOF, Exhibit "D."

However, none of the aforementioned documentation supports that Waterford acted with an evil intent or reckless disregard towards Plaintiff's rights. *See id.* Additionally, there is no other record evidence that supports Waterford acted in such a way that could possibly warrant an award of punitive damages to Plaintiff. As there is no record evidence to support a claim for punitive damages, summary judgment is proper on this category of damages. *Nunez v. Coloplast Corp.*, 461 F.Supp.3d 1260, 1270 (S.D. Fla. 2020) (entering summary judgment in favor of defendant on the issue of punitive damages because the record does not show evidence of intentional misconduct or gross negligence).

## CONCLUSION

As explained herein, even upon viewing the summary judgment evidence in a light most favorable to Plaintiff, Plaintiff has failed to establish she is entitled to any damages. Specifically, there is no record evidence, outside of Plaintiff's self-serving and conclusory assertions, to support the damages she is claiming against Waterford. Therefore, Plaintiff can recover nothing, and judgment should be entered in Waterford's favor as a matter of law.

WHEREFORE, Defendant, WATERFORD AT ABERDEEN ASSOCIATION, INC., requests this Honorable Court to enter partial summary judgment in its favor against Plaintiff, LORI ROBINS, and to grant any other relief that this Court deems just and proper in favor of Waterford.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that that on this 19th day of September, 2025, a true and correct copy of foregoing was filed electronically via the CM/ECF System and served via e-notice on counsel of record for all parties identified below.

>COLE, SCOTT & KISSANE, P.A.
>*Counsel for Defendant, Waterford at Aberdeen Association, Inc.*
>222 Lakeview Avenue, Suite 500
>West Palm Beach, FL 33401
>Telephone: (561) 383-9200
>Facsimile: (561) 683-8977
>E-mail: jillian.strasser@csklegal.com
>E-mail: emma.mccarthy@csklegal.com
>
>By: */s/ Emma L. McCarthy*
>JILLIAN STRASSER
>FL Bar No.: 113611
>EMMA L. MCCARTHY
>FL Bar No.: 1048504