UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-81213-CIV-SINGHAL

LORI ROBINS,

    Plaintiff,

v.

WATERFORD
AT ABERDEEN ASSOCIATION, INC., *et al.*,

    Defendants.
_____/

## **ORDER**

Plaintiff Lori Robins has sued Waterford at Aberdeen Association, Inc. ("Waterford"), a homeowners' association ("HOA"). She alleged that Waterford discriminated and retaliated against her under the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* ("FHA") and the Florida Fair Housing Act, § 760.20 *et seq.*, Florida Statutes (2025) ("FLFHA"). Robins moved for summary judgment on her discrimination claims and partial summary judgment on her retaliation claims. ("Plaintiff's Motion") (DE [77]). Waterford moved for partial summary judgment as to damages. ("Defendant's Motion) (DE [83]). Both motions are fully briefed and ripe for review. Because both motions raise both questions of law decidable now by this Court and questions of fact for the jury, this Court grants summary judgment in part and denies in part both motions.

I.    BACKGROUND

Plaintiff is visually impaired. (Robins' Depo. (DE [85-1] 100:6-101:18)); (DE [111-2]). She purchased a home in Waterford, a subdivision of Aberdeen Golf & Country Club. (DE [111] 8, ¶ 18). In her application to purchase the home, she indicated her vision

disability. *See e.g.*, (Topf Depo. (DE [85-3] 36:9-16). As a result of her disability, she is unable to access websites without using her screen reader software. (DE [85-2] ¶ 4(m)). On December 9, 2022, Robins sent Waterford a brief email stating that its website was not accessible, and she requested a large font copy of the HOA's information. (DE [85-18]). On October 4, 2024, after she filed this lawsuit (DE [1]), Plaintiff informed Waterford that the website of its property manager, GRS Management Company, was inaccessible. (DE [85-11]). She also renewed a previous request that the inaccessible gate lock for the swimming pool be replaced with an accessible one. *Id.*

After this, Robins engaged in a lengthy e-mail discussion with Waterford's property manager regarding alternative accommodations for tasks normally completed using the GRS website, since she could not access it. On October 22, 2024 she requested that Waterford mail her a copy of the ACH transaction form, so that she could pay her HOA fees via direct deposit, as well as a copy of the welcome packet. (DE [111-5]). On October 25, 2024, Nichole Ware, who worked for GRS, wrote back that the ACH form and welcome letter were previously mailed to Robins. *Id.* On October 25, 2024, Robins wrote that she could not read the packet and requested one in larger font. She also asked that all written correspondence be sent in an accessible format of Arial 22. *Id.* On November 5, 2024, Robins reiterated her need for a mailed copy of the ACH form. *Id.* Later that same day, Ware wrote that "[t]his was addressed during our last conversation and revised welcome letter in large print was sent to you via email in the font you requested. I am attaching again here." *Id.* Also on that same day, Robins wrote back that she does not have a printer and wanted a physical form and unstamped return envelope. *Id.* On November 7, 2024, Ware wrote that "[i]t has been mailed to your address." *Id.*

On November 18, 2024, Robins emailed a letter to Ware, requesting an accommodation for submitting work orders. (DE [85-25]). Instead of trying to submit letters through the inaccessible website, Robins requested, among other things, that she be allowed to email work orders to GRS. *Id.* Ware wrote back that she had received the request. (DE [111-6]).

In her lawsuit, Robins has raised retaliation claims along with her discrimination claims. She claims that as a result of her accommodation requests, Waterford ignored her unrelated maintenance requests, refused to inform her of life-threatening safety hazards, and ignored residents' efforts to harass and threaten her. (DE [29] ¶¶ 273-76). Both Robins and Waterford moved for partial summary judgment, which are before the Court today.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a));[1] *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" if a reasonable trier of fact, viewing all the record evidence, could rationally find in favor of the nonmoving party in light of his burden of

---

[1] The 2010 Amendment to Rule 56(a) substituted the phrase "genuine dispute" for the former "'genuine issue' of any material fact."

proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law." *DA Realty Holdings, LLC v. Tenn. Land Consultants*, 631 Fed. Appx. 817, 820 (11th Cir. 2015).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). "[T]his, however, does not mean that we are constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994). To prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015).

III.   DISCUSSION

Robins has moved for summary judgment on her claims under both the FHA and FLFHA. The FLFHA adopted the FHA's provisions for discrimination almost verbatim, such that a violation of the FHA will also amount to a violation of the FLFHA. *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014). *Compare* 42 U.S.C. § 3604(f)(3)(b), *with* § 760.23(9)(b), Fla. Stat. (2025).

As an initial matter, in her motion for summary judgment, Robins argues that she has been discriminated against in many ways that she does not allege in her Amended

Complaint. Each alleged failure on the part of Waterford to provide a reasonable accommodation is a separate cause of action, and must be pled separately. *See Cano v. 245 C&C, LLC*, 2019 WL 11769098, at *5 (S.D. Fla. July 19, 2019) ("The separate instances of Defendants' alleged failure to provide a reasonable accommodation rest on different factual foundations and must be pled separately."). In the Amended Complaint, Robins only alleges that Waterford discriminated against her by not providing her an accommodation for the inaccessible website and by not modifying the pool gate lock. (DE [29] ¶¶ 210-216). Because the Amended Complaint is the controlling pleading, this litigation is thus limited to those two allegations of discrimination, and the Court will only consider arguments for summary judgment related to those. Robins has raised two arguments in her summary judgment motion that Waterford discriminated against her by denying her accommodations for the website: that Waterford refused to send her physical copies of the AHA form and that Waterford refused to allow her to email work orders. (Amend. Compl. (DE [29] ¶ 212(a), (h); 212(f))).[2] The Court will also consider Robins' argument that Waterford discriminated against her by refusing her request to modify the inaccessible pool gate lock.

A. <u>Plaintiff's Accommodation Claims</u>

To succeed on a failure-to-accommodate discrimination claim under the FHA, a plaintiff must show that the defendant "refus[ed] to make reasonable accommodations in

---

[2] The Court declines to consider, among others, her arguments that Waterford discriminated against her by not sending her a large-font welcome packet or emailing her notifications prior to spraying chemicals near her home. Although Robins claims that both of these are related to her inability to access the website, the Amended Complaint does not make allegations supporting either of these arguments. The Amended Complaint does not plead that the welcome packet information was available on the website but inaccessible to Robins. *See* (DE [29] ¶ 212). Nor does the Amended Complaint plead that community updates or notices about maintenance like spraying were available on the website but not accessible to Robins. *See* (DE [29] ¶ 212). Therefore, since these arguments are not tied to allegations made in the controlling pleading, this Court cannot consider them.

rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B); *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1218-19 (11th Cir. 2008).

Here, Robins is entitled to judgment on one, but not both, of her claims that Waterford discriminated against her by refusing her accommodation request. Due to her disability, Robins could not access Waterford's website to pay her HOA fees or submit work orders. (DE [85-21]; [85-26]; [29] ¶ 212(a), (f), (h)). As an accommodation, she requested that a large-print copy of the ACH automatic withdrawal form be mailed to her. (DE [111-5]). She also requested that she be able to email work order requests, because she could not submit work orders via the inaccessible website. (DE [85-26]). Each of these accommodation requests will be addressed in turn.

Waterford, via GRS,[3] responded to her request for the ACH form, informing her that it had been previously mailed to her. (DE [111-5]). Robins wrote back that she could not read it because of the small font size, and she needed it in a larger font. *Id.* After further back and forth, Robins reiterated that she wanted a large-print physical copy of the ACH form. *Id.* Waterford responded that "[it] has been mailed to your address." *Id.* Ware testified that prior to the last email she had already mailed the ACH form in an accessible font. (Dep. Nichole Ware (DE [85-5] 56:3-7). But Robins argues that she never received the form. (DE [122] ¶ 25). Whether Waterford actually mailed the accessible ACH form is a question of fact for the jury. Because it is a question of fact whether

---

[3] Neither party claims that Waterford is not liable for its property manager's decisions and communications.

Waterford refused Robins' request, summary judgment would be inappropriate on this claim.

Next, Waterford indicated that it had received Robins' request that Waterford allow her to email work orders. (DE [111-6]). But Waterford's property manager herself admitted that after conferring with Waterford, and following its direction, she did not further respond to Robins' request. (DE [85-5] at 44-46).[4] Ignoring an accommodation request after reviewing it is legally tantamount to rejecting the request. *See Bhogaita*, 765 F.3d at 1286. Waterford admitted that it never responded to this request. This is not a case where the housing provider dilly-dallied before responding months later. Waterford never responded. This amounted to a constructive rejection of Robins' request.

Having determined that Waterford rejected the request, the Court must decide if Robins' request was necessary and reasonable. *See Schwarz*, 544 F.3d at 1218-19. Considering that Robins states she was unable to access the form to submit a work order due to her visual impairment, this accommodation appears necessary. See (DE [85-1] 115:2-5). And the request is very reasonable. All she asked is that she be able to email the work orders directly instead of having to navigate the website. This would have been the smallest of burdens for Waterford.

Because she has met the requirements as a matter of law, Robins is entitled to summary judgment on her claims under the FHA and FLFHA that Waterford discriminated against her by ignoring her request for accommodation to submit work-order requests via email.

---

[4] This is the same property manager who had responded to Plaintiff's requests for a large-font ACH form, just three weeks prior.

B. <u>Plaintiff's Modification Claim</u>

Robins next claims that Waterford discriminated against her by ignoring her request to modify the pool lock so she could access it. But unlike a request for an accommodation, a modification must be made at the handicapped person's expense. § 3604(f)(3)(A) ("For purposes of this subsection, discrimination includes—a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises . . . ."). Robins does not claim to have offered to pay for the modification. *See* (DE [85-11]). Instead Robins argues that she was never given a chance to offer to pay because Waterford never responded. But Robins has confused the order of the parties' obligations under the statute. Before the Court determines whether Waterford refused the modification request, the Court must decide if Robins properly made a modification request. And one of the requirements of a modification request is that the handicapped person offer to pay for it oneself. *See Wood v. Briarwinds Condo. Ass'n Bd. of Directors*, 2009 WL 10668944 (S.D. Fla. Mar. 20, 2009), *aff'd,* 369 Fed. Appx. 1 (11th Cir. 2010) ("Wood has not alleged that he has offered to modify or replace the pool furniture at his own expense and that Briarwinds has denied such request. Accordingly, Wood has failed to sufficiently allege discrimination . . . ."). *See also Nichols v. Carriage House Condominiums at Perry Hall Farms, Inc.*, 2015 WL 4393995, at *5 (D. Md. July 15, 2015) ("Regarding the modification claim, he never states that he will pay for the requested modification.").

The nature of the statutory language also indicates that the handicapped person must offer to pay as part of the modification request. Unlike an accommodation request,

where the handicapped person is requesting that the defendant take action, in a modification request the handicapped person asks the defendant to allow the handicapped person to take action or to pay for an action. Later in § 3604, the statute creates an exception for rentals. A landlord "may where it is reasonable to do so *condition permission for a modification*." § 3604(f)(3)(A). This language describes the defendant's duties as passive—granting permission for a modification. The property defendant does not have to actively make the modification themselves. Since the defendant does not necessarily have to do anything but only has to approve the request, this Court reads the statute as placing the burden on the handicapped person to make a full modification request, including offering to pay the expenses. Merely asking the defendant to fix something is insufficient. Until the plaintiff offers to pay, the defendant is not liable under the FHA for ignoring or rejecting the plaintiff's modification request. Since Robins never claims that she offered to pay to modify the pool lock, she is not entitled to summary judgment on this claim.

    C. <u>Plaintiff's Retaliation Claim</u>

Robins seeks partial summary judgment on her retaliation claim under the FHA and FLFHA. "In order to state a cause of action for retaliation in violation of the Fair Housing Act, a plaintiff must allege (1) that he or she engaged in protected activity, (2) that he or she suffered adverse actions, and (3) that the adverse action was causally related to the protected activity." *Hous. Opportunities Project For Excellence, Inc. v. Key Colony No. 4 Condo. Assoc., Inc.*, 510 F. Supp. 2d 1003, 1013 (S.D. Fla. 2007) (citing 42 U.S.C. § 3617). In the FHA context, "[r]equesting a reasonable accommodation

constitutes protected activity." *Bone v. Vill. Club, Inc.*, 223 F. Supp. 3d 1203, 1218 (M.D. Fla. 2016).

Robins seeks partial summary judgment for essentially the first element of this claim—that she engaged in protected activities and that Waterford was aware of those protected activities. Robins contends that her requests for accommodation were protected activity. Whether her requests rose to protected activity—whether they were reasonable—would generally be a question of fact for the jury. But because this Court grants summary judgment to her FHA and FLHSA claims that Waterford discriminated against her when she asked for the reasonable accommodation of emailing work orders, this Court also concludes that Robins engaged in protected activity and that Waterford was aware of it. Summary judgment is granted as to the work-order claims only. Whether any of her other requests were protected activity is a question of fact for the jury.

D.  Waterford's Damages Summary Judgment Motion

Having addressed Robins' motion for summary judgment, the Court turns to Defendant's cross-motion for summary judgment on damages. Waterford claims entitlement to summary judgment on damages for membership fees and dues, damages resulting from property damage, damages for diminution of value of the home, and punitive damages. Here, the question of damages is mostly a factual one, such that it is the province of the jury. There are significant questions of fact, such as whether any of Robins' property damages are barred under Waterford's List of Responsibilities of Waterford Homeowners Association and Waterford Homeowners. *See* (DE [84-5]). And although the question of whether Waterford's actions resulted in a diminution of Robins' property value involves significant issues of law, none of those legal issues were raised

by Waterford. Accordingly, the question of diminution in value is one that should go to the jury to decide the factual issues. There are questions of fact even for punitive damages, such as whether Waterford recklessly ignored Robins' accommodation requests.

But there is one question of damages that the Court can resolve as a matter of law. Waterford asks the Court to cap Robins' damages for membership fees and dues she paid at $700 per month.[5] Defendant reached this number of $700 per month for fees as the high end of the range to which Robins testified. (DE [85-1] 89:6-8). In her response arguing why these damages should not be capped, Robins counters by pointing to alleged damages unrelated to membership fees and dues. She points to property damages resulting from alleged drainage issues. But she does not dispute that the amount of membership fees and dues did not exceed $700 per month. Since there is no factual dispute, the Court grants summary judgment on this issue. Robins' damages from the membership dues and fees she paid are capped at $700 per month. All other damages issues should proceed to a jury.

IV.  CONCLUSION

Like many cases, this one involves both questions of law and fact. Accordingly, for the reasons stated above, it is **HEREBY ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion (DE [77]) is **GRANTED in part and DENIED in part,** as outlined in this Order.

---

[5] More specifically, Waterford requests this Court cap her damages at $25,000.00—36 months at $700.00 per month. Although Waterford starts this 36 month date at September 2022, it is not clear at this point when or if Robins stopped paying. Instead of creating a total sum cap, it is more expedient to just limit the amount Robins can recover for each month that she paid. The number of months can be clarified later.

2. Defendant's Motion (DE [83]) is **GRANTED in part and DENIED in part,** as outlined in this Order.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 4th day of February 2026.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies to counsel of record via CM/ECF